WILMOTH *et al. v.* PHOENIX UTILITY Co. *et al.*

*(Knoxville,* September Term, 1934.)

Opinion filed October 20, 1934.

CARL T. HOUSTON and HARRY O. BALES, both of Knoxville, for appellants.

THOMAS H. GOODMAN, of Knoxville, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Parties on both sides of this compensation case appeal from the decree of the chancellor. The employing company concedes liability for compensation to the widow of 30 per cent. of the deceased employee's average weekly wages. Claims were made for a 10 per cent. allowance to an infant ward of the deceased, and for an additional 10 per cent. allowance to a mother-in-law, both alleged to be dependents. The chancellor allowed the first claim and denied the latter. A further controversy is presented as to the exact amount of the average wages of the deceased.

1. The child, four years old on the filing of the petition, had been taken from the custody of its parents in June, 1930, by the juvenile court of Knox county, which found the parents to be unfit to retain its custody, and placed in the care and custody of the deceased and his wife. It had been wholly supported by the deceased as a dependent member of his family until his death. We agree with the chancellor that this child was a dependent in the sense of the statute and his decree awarding 40 per cent. of the average weekly wages of the deceased to the widow and this child will be affirmed. The award is controlled by Code, section 6883, subdivisions (1) and (7). Relationship is not the test, but support and actual dependency of the child. See our cases of *Portin* v. *Portin*, 149 Tenn., 530, 261 S. W., 362; *Kinnard* v. *Tenn. Chemical Co.*, 157 Tenn., 206, 7 S. W. (2d), 807, and *Memphis Fertilizer Co.* v. *Small*, 160 Tenn., 237, 238, 22 S. W. (2d), 1037. The obligation of the care and custody of this child was placed upon the deceased by court decree and it became his ward (see Code, section 10289) and dependent in a legal as well as a moral sense, despite the fact that it had living blood parents.

2. We agree with the chancellor also that the mother-in-law was not entitled to recover compensation as a dependent. While she spent a large portion of her time in the home of the deceased, she was the owner of income bearing property, the present value of which is apparently fully equal to the cash or present value of the claimed compensation, and had several sons and daughters ready to support and care for her as necessary. The stipulation shows that it was ''by her own choice'' that she lived with this daughter and son-in-law, not from

necessity; that her own sons were prepared, ''able and willing,'' to provide her with a home and all needed comforts. She was in the home of deceased not as a dependent, but as a voluntary visitor.

■■■ 3. The remaining question relates to the amount of the compensation. The chancellor fixed the average weekly wage at $22.76, and this appears to be correct. The company and its insurer contend the figure should be $19.85. The difference arises from a dispute as to the method of making the calculation. The deceased had been a regular employee of this company for several years. He was such an employee during the 52 weeks immediately preceding his death, although he was ''loaned'' and worked for another company 3 weeks during that year. Despite this temporary change, we think he should be treated as a regular employee of this company for the year. This was substantially the case. He therefore falls under the first method provided for by subdivision (c) of the Code, section 6852. See *White* v. *Pinkerton Co.*, 155 Tenn., 229, 231, 291 S. W., 448. Since it appears that he lost more than 7 days during the period, the number of weeks by which his total wages must be divided, in order to arrive at the average weekly wages, is 52 less the number of weeks he lost, and this number of weeks to be subtracted is arrived at by dividing the total days lost from work by seven. As found by the chancellor, his total earnings for the 52 weeks were $1,030.74. He lost 47 days, or 6⁵⁄₇ weeks, which deducted from 52 weeks leaves 45²⁄₇ weeks. This divided into $1,030.74 gives $22.76.

It results that the decree of the chancellor is in all things affirmed.