J. Pierce Armstrong, Rhea Armstrong and Mrs. Annie Armstrong, d/b/a Armstrong Farm, Plaintiffs-in-Error,

*v.*

Howard Spears, Defendant-in-Error.

393 S.W.2d 729

(*Knoxville,* September Term, 1964.)

Opinion filed September 13, 1965.

HUNTER, SMITH, DAVIS, NORRIS & WADDY, BEN C. DAVIS, EDWIN L. TREADWAY, Kingsport, for plaintiffs in error.

HYDER & JENKINS, J. EDWARD HYDER, Rogersville, for defendant in error.

PER CURIAM.

This is a workmen's compensation case. The trial judge granted the plaintiff, Howard Spears, weekly compensation of $36.00 for a seventy-five per cent permanent partial disability to the body as a whole, together with temporary total disability benefits and medical and hospital expenses. Defendants have appealed and assigned six assignments of error.

In his petition, plaintiff alleged defendants had elected to be bound by the workmen's compensation law; that on May 22, 1964, while working for defendants, he suffered a serious injury to his back; and that at the time he was being paid a wage of $1.75 per hour.

The defendants, by their answer, admitted they had elected to be bound by the Workmen's Compensation Act insofar as their regular employees were concerned. However, they alleged plaintiff was not a regular employee, but was an independent contractor or a casual employee and therefore not covered by the Workmen's Compensation Act. Other averments of the petition relating to the average weekly wage of plaintiff and the extent of his injuries were denied.

It is shown in the record the defendants own and operate a farm consisting of approximately 650 acres of land, on which 20 or more buildings are located. On May 14, 1964, the plaintiff agreed to paint the east side of a mule barn on the farm, including the shed, and the roof

of a tobacco barn, for a stipulated sum of $90.00. After plaintiff completed painting the mule barn, the defendant, Pierce Armstrong, engaged the plaintiff to paint the roof of a garage and a wash house, the trim on a dwelling house and the east side of a corncrib at a stipulated wage of $1.75 an hour.

Plaintiff testified the defendant, Pierce Armstrong, decided it was too hot to paint the roof of the tobacco barn and directed plaintiff to paint the trim on the dwelling house. He further testified Armstrong directed him to paint the wash house after he completed the painting on the dwelling. At about four P.M., on May 22, 1964, Pierce Armstrong paid plaintiff for twenty hours of labor done on May 21 and 22, 1964, at $1.75 an hour. Armstrong left and the plaintiff went to the wash house to paint there. While painting the wash house that afternoon plaintiff sustained his injury when he fell from the roof of the building some twenty-five to thirty feet to the ground.

Plaintiff testified he was not required to report for work at a specific hour each day; nor was he required to work a specific number of hours each day. He kept his own time.

· On cross examination Pierce Armstrong stated that a considerable part of the operation of the farm required repair and maintenance of the buildings and fences thereon. He was asked how often it was necessary to paint the buildings and he replied it was needed quite often. He further testified the regular employees on the farm, at times, had painted the buildings.

Dr. Merritt B. Shobe, an orthopedic surgeon, testified plaintiff suffered fractures of the fifth lumbar vertebrae,

the sacrum, acetabulum, and the upper part of his pelvis. He stated plaintiff, due to his injuries, was unable to work as a regular painter. That he could do light work and should not undertake to climb ladders. That he could stand on his feet and paint; but, as far as doing regular painting work, he was almost one hundred per cent disabled. He further stated he would suffer pain in his back for a period of time and his injuries would affect his bending, stooping and lifting. That he had limitation of motion in all directions.

■ Defendants' first four assignments of error insist there is no material evidence in the record to sustain the finding of the trial judge that plaintiff was an employee covered by the Workmen's Compensation Act. They insist, under the facts, plaintiff was either an independent contractor or a casual employee and not covered by the Compensation Law.

In the case of *Odom v. Sanford and Treadway,* 156 Tenn. 202, 299 S.W. 1045 (1927), an independent contractor is defined to be: "One who exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and free from any superior authority in him to say how the specified work shall be done or what the laborers shall do as it progresses; one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result."

In determining whether plaintiff was an employee or an independent contractor under the Workmen's Compensation Act, it is our duty to give the Act a liberal construc-

tion in favor of the fact he was an employee rather than a strict construction. *Barker v. Curtis,* 199 Tenn. 413, 287 S.W.2d 43 (1959); *Seals v. Zollo,* 205 Tenn. 463, 327 S.W.2d 41 (1958).

"There is no absolute formula whereby it can be determined whether a workmen's compensation claimant is an employee or an independent contractor, but facts of each particular case must be taken into consideration and a determination must be made from such facts". *Seals v. Zollo,* supra; *Barker v. Curtis,* supra; *Smart v. Embry,* 208 Tenn. 686, 348 S.W.2d 322 (1961).

In the instant case, there is evidence one of the defendants, Pierce Armstrong, directed plaintiff to paint the trim on the dwelling house on a particular day and the plaintiff complied. It is also obvious from this record defendants had a right to terminate the employment of plaintiff at any time. Moreover, there is also testimony to the effect defendants, at other times, had directed their regular employees to paint the farm buildings.

■ As said in the case of *Owens v. Turner,* 211 Tenn. 121, 362 S.W.2d 793 (1962).

"As to whether he was an employee or independent contractor is whether the employer had the right to control the employee in doing his work, and the test is not a question of whether the right was exercised but whether the right existed. The defendant had the right to terminate the employment at any time. Such right is incompatible with full control of the work which is usually enjoyed by an independent contractor."

To the same effect see *Brademeyer v. Chickasaw Building Company,* 190 Tenn. 239, 229 S.W.2d 323 (1950); and *Seals v. Zollo,* supra.

However, defendants earnestly insist the case of *Federated Mutual Implement and Hardware v. Shoemaker,* 211 Tenn. 523, 366 S.W.2d 129 (1962), is controlling under the facts of this case. But we do not agree. The facts in that case are Shoemaker, a carpenter, contracted to replace some rotten boards above the sliding doors of a garage. He was shown the boards to be replaced and agreed to do the work for the owner of the garage. He was not told how to do the work nor when to start to work. No one supervised or controlled the work. No agreement was made as to Shoemaker's compensation for doing the work. It was understood by the owner, Shoemaker would submit a bill after the completion of the work. There was no proof in the record that any of the owner's regular employees had ever done any repair work on the garage. Shoemaker fell from a ladder while performing the work and sustained injuries for which he petitioned for benefits under the Workmen's Compensation Act. This Court held under the foregoing facts petitioner was an independent contractor.

In the instant case, as pointed out, the employer controlled the work of plaintiff. It is also shown defendants' regular employees, in the present case, had at different times painted the buildings and done other maintenance and repair work about the farm.

We think under authority of the cases hereinabove cited there is material evidence in the record to support the finding of the trial judge, plaintiff was not an independent contractor.

We now consider whether plaintiff was a casual employee as contended by defendant.

Subsection(b) of Section 50-906, T.C.A., provides:

"Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation of the employer."

It is said in Section 51, page 759, of Volume 1 of Larson on Compensation, that:

"Employment is 'casual' when it is irregular, unpredictable, sporadic and brief in nature. Under most statutes, even if casual, it is not exempt unless it is also outside the usual business of the employer. Under this test, most maintenance and repair activities, as well as even remodeling and incidental construction, have been held to be within the usual course of a business."

And at page 765 of the same volume of the same treatise, it is said:

"Behind all of these decisions lies one simple thought: maintenance, repair, painting, cleaning and the like are 'in the course' of business because the business could not be carried on without them, and because they are expectable, routine and inherent part of carrying on any enterprise."

The above was quoted with approval by this Court in the case of *Smith v. Lincoln Memorial University*, 202 Tenn. 238, 304 S.W.2d 70 (1957), in an opinion by Chief Justice Burnett. In that case, the University had employed the claimant, Smith, to paint some of its buildings. Smith sustained an accidental injury while so employed and filed a petition against the University for

workmen's compensation benefits. The University defended the action on the ground Smith was a casual employee because painting buildings was not a part of the educational process which was the main function of the University. This Court held that maintenance of this sort was essential to carrying on a business, including education, and thus claimant was not a casual employee.

There is material proof in the record of the case at bar the maintenance and upkeep of the buildings on the farm of defendants was an expectable, routine and inherent part of carrying on the farming enterprise. Furthermore, as shown there is the testimony of Armstrong defendants' regular employees were from time to time employed in painting the buildings.

Where an employer regularly employs employees in a given class of work, this may be evidence that such work is in the usual course of such an employer's trade, business or occupation. *Dancy v. Abraham Brothers Packing Company,* 171 Tenn. 311, 102 S.W.2d 526 (1938).

Accordingly, we think there is material evidence in this record to support the findings of the trial judge the plaintiff was an employee covered by the Workmen's Compensation Act and not an independent contractor or a casual employee.

It is not the function of this Court to weigh the evidence in Workmen's Compensation cases, but to see whether there is any material evidence to support the findings of the trial court, and if so supported, its findings will not be disturbed. *Reedy v. Mid-State Baptist Hospital,* 210 Tenn. 398, 359 S.W.2d 822 (1962).

For the foregoing reasons we overrule defendants' assignments of error one through four.

■ Defendants' fifth assignment of error is there is no material evidence to support the findings of the trial judge that plaintiff had sustained a temporary total disability for a period of eighteen and three-sevenths weeks, or from May 23, 1964, the day following his injuries, until September 29, 1964; and that he also sustained a seventy-five per cent permanent partial disability to his body as a whole by reason of his injuries.

The record shows this case was tried on November 11, 1964, and plaintiff testified he was confined in a hospital for thirty-three days following the accident. He stated he had been unable to work since the accident.

Dr. Shobe testified that he had examined plaintiff on November 3, 1964, and found the fractures to plaintiff's pelvis had healed well. He further testified in his opinion plaintiff could not carry on the regular work of a painter such as bending, stooping, climbing ladders and lifting. He was of the opinion plaintiff could do light work as a painter by standing on his feet, but could not climb ladders. It is true Dr. Shobe was of the opinion the plaintiff had suffered a fifteen per cent disability to his back but in view of the other testimony of the Doctor we think this estimate of his disability was from a medical and not an industrial standpoint.

Accordingly, we think there is material evidence to support the findings of the trial judge as to the extent of plaintiff's disability.

■ The extent of disability in workmen's compensation cases is purely a question of fact, and the findings of the trial judge are conclusive on appeal, if supported by any substantial or material evidence. *Fidelity & Casualty Company v. Treadwell,* 212 Tenn. 1, 367 S.W.2d 470

(1963); *Ward v. N. A. Rayon Corporation,* 211 Tenn. 535, 366 S.W.2d 134 (1963).

We overrule defendants' fifth assignment of error.

■ By their sixth assignment of error, defendants insist there is no material evidence in the record to sustain the finding of the trial judge the average weekly wage of the plaintiff was $70.00 per week.

We are of the opinion this assignment is good and sustain it.

The only proof in the record as to plaintiff's earnings is that Armstrong paid plaintiff $35.00 for twenty hours of work, or $1.75 per hour. The trial judge stated he based his findings upon this testimony. He arrived at the finding of an average weekly wage of $70.00 on the basis of a forty hour week at a wage of $1.75 an hour. Subsection (c) of Section 50-902, T.C.A., provides for three methods of ascertaining the average weekly wage of a workmen's compensation claimant. This record is devoid of any proof upon which a court could determine the average weekly wage of the plaintiff as defined in that section.

Subsections (a) and (c) of Section 50-1007, T.C.A., provide for a percentage of the average weekly wage of a claimant for benefits for temporary total disability and permanent partial disability.

■ The average weekly wage of petitioner must be ascertained by past earnings and not by what he may earn in the future. *White v. Pinkerton Co.,* 155 Tenn. 229, 291 S.W. 448 (1927).

Thus, it is our opinion it was error on the part of the trial judge to base his finding of plaintiffs average weekly wage upon what he was being paid at the time.

The cause will be remanded and the trial judge directed to hear proof and fix plaintiff's average weekly wage in accordance with Subsection (c) of Section 50-902 of T.C.A.